JAMES T. BURTON (Utah Bar No. 11875)
*jburton@kmclaw.com*
JOSHUA S. RUPP (Utah Bar No. 12647)
*jrupp@kmclaw.com*
**KIRTON │ MCCONKIE**
Key Bank Tower
36 S. State Street, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

*Attorneys for Plaintiffs Snowie LLC
and Carl A. Rupp*

---

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SNOWIE, LLC., a Utah limited liability company, and CARL A. RUPP, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> KONA ICE, INC., a Kentucky corporation, ANTHONY LAMB, an individual, ANTHONY M. GUARD, an individual, and John Does 1-10, <br><br> Defendants. | **COMPLAINT AND JURY DEMAND** <br><br> Case No.: _____ <br><br> Judge: _____ <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Snowie, LLC ("Snowie") and Carl A. Rupp ("Rupp") (collectively, "Plaintiffs"), by and through counsel, hereby complain and allege for their complaint against Defendants Kona Ice, Inc. ("Kona"), Anthony Lamb ("Lamb"), Anthony M. Guard ("Guard") and John Does 1-10 (collectively, "Defendants" unless otherwise specified) as follows:

4836-9964-4512

## PARTIES

1.      Plaintiff Snowie is a Utah limited liability company with its principal place of business in the State of Utah.

2.      Plaintiff Rupp is an individual residing in the State of Utah and one of the founders and co-owners of Snowie.

3.      On information and belief, Defendant Kona is a Kentucky corporation having its principal place of business at 5945 Centennial Circle, Florence, Kentucky 41042.

4.      On information and belief, Defendant Lamb is an individual residing or doing business at 710 Chambers Road, Walton, Kentucky 41094. Lamb is the registered agent for Kona. On information and belief, Lamb is the owner and founder of Kona.

5.      On information and belief, Defendant Guard is an individual residing in the State Kentucky.

## JURISDICTION AND VENUE

6.      This is an action arising under the Patent Laws of the United States, Title 35 of the United States Code. This Court, therefore, has subject matter jurisdiction over this lawsuit under at least 28 U.S.C. §§ 1331 (federal question jurisdiction), 1338 (jurisdiction over actions relating to patents) and 1367 (supplemental jurisdiction).

7.      This Court also has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1332 where the Plaintiffs and Defendants are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4836-9964-4512

8.      This Court has general and/or personal jurisdiction over each of the Defendants inasmuch as the Defendants either regularly transact business within this District or the Plaintiffs' claims against the Defendants arise out of Defendants' actions and omissions occurring, in full or in part, within this District or affecting property within this District.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3) as this District is where a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of this action is situated, and one or more of the Defendants are subject to the Court's personal jurisdiction.

10.     Jurisdiction and venue are predicated upon United States Code, Title 28, §§ 1331, 1338 and 1391. There exists a good faith, ongoing dispute that Defendant violated, and continues to violate, one or more federal statutes by actions he took in this district.

## GENERAL ALLEGATIONS

11.     Founded in 1998, Snowie is a leading innovator in the shaved-ice confection industry, having developed and commercialized numerous shaved-ice products since its inception, including, but not limited to, flavors, flavor dispensing systems, ice shaving machines, accessories, mobile retail units such as automobiles, buildings, kiosks, carts, tricycles, and many other products which can be viewed at www.snowie.com. Snowie's contributions over the past two decades have revolutionized the shaved-ice industry, introducing a variety of innovative products and continuing to innovate new and novel products on an ongoing basis.

12.     Snowie's creative achievements have resulted in significant intellectual property rights protecting its innovations, including utility and design patents, trademarks, and trade dress.

3

Nevertheless, much of Snowie's intellectual property is often the subject of widespread emulation by Snowie's competitors attempting to capitalize on Snowie's success by infringing, or seeking to unfairly trade, on Snowie's innovative technology, distinctive designs, and elegant and distinctive products.

13.     Plaintiff Rupp, one of the founders and co-owners of Snowie, has more than thirty-five (35) years of experience in the shaved-ice confection industry, having also founded Sno Shack, Inc., a predecessor to Snowie. Plaintiff Rupp is the principal inventor responsible for Snowie's existing innovative products and continuing efforts to innovate new and novel products in the shaved-ice confection industry.

14.     Prior to approximately 1997, Snowie and its predecessor (along with various industry competitors) used quart (or similar size) serving bottles to hand pour flavoring on shaved-ice confections. This method of applying flavoring to shaved-ice confections is time consuming and labor intensive, often resulting in a service bottleneck at large events, festivals or fairs where shaved-ice confections are popular and in high demand by a large number of people simultaneously. In other words, applying flavoring to shaved-ice confections by hand limited the number of sales while requiring additional employees or workers. Moreover, hand-dispensing flavoring often resulted in spills that required time and effort to clean up.

15.     From approximately 1997 through 1999, Snowie began using bar guns (popular for serving beverages) to dispense flavoring over shaved-ice confections. Bar guns allowed up to ten (10) different flavors to be independently dispensed from a single bar gun, with each independent flavor pumped from a large jug or container by electric or $CO_2$ driven pumps and

corresponding to a different button on the bar gun. In this manner, the bar guns allowed an employee to put one or more of ten (10) flavors on a shaved-ice confection by simply moving the employee's thumb over the corresponding bar gun button for each flavor and depressing the button until sufficient flavor had been dispensed. As a result, the bar guns significantly increased the speed with which an employee could flavor a shaved-ice confection and allowed the flavor to be stored in larger containers rather than in hand-held quart serving bottles thus reducing the labor of refilling such bottles. Nevertheless, the bar gun still required an employee to dispense the flavor often resulting in a service bottleneck and reducing the number of sales that could otherwise be accomplished. And dispending flavoring by means of a bar gun also often resulted in spills that required time and effort to clean up.

16. In approximately 2000, to solve the problems associated with the above-referenced hand-held serving bottles and bar gun flavor dispensers, Plaintiff Rupp invented, designed, developed and manufactured a standalone, end-consumer-accessible flavor dispensing system eventually marketed, commercialized and sold by Snowie under the tradename "Flavor Station." Plaintiff Rupp initially invented two Flavor Station varieties, one that gave users independent access to up to six (6) different flavors and a second that gave users independent access to up to twelve (12) different flavors. As indicated, once set up, a Flavor Station was accessible to end-consumers, enabling end-consumers to apply their own flavoring to shaved-ice confections thus eliminating the need to employ workers to apply the flavoring as had been done in the past. Moreover, a single Flavor Station was accessible from multiple sides, allowing as many as three end-consumers to apply flavoring to their previously purchased shaved-ice

5

confections simultaneously. In this way, the service bottleneck associated with historical flavor dispensing methods and devices was reduced or eliminated altogether. Likewise, each Flavor Station had a drip area and self-contained waist container connected thereto so that flavoring spills would be collected and routed to the waist container automatically, thus reducing the cleanup required to maintain a clean working environment.

17.     Innovating and developing the first Flavor Stations required significant iterations, experience, know how, and skill possessed and perfected by Plaintiff Rupp over the ensuing years.

18.     Over time, Snowie's Flavor Stations achieved significant and enviable success in the shaved-ice confection industry, significantly increasing the volume of potential sales and associated revenues for individual shaved-ice retail outlets. Likewise, end-consumers prized Snowie's Flavor Stations, which enabled them to apply their own flavoring, resulting in increased popularity and notoriety attributed to Snowie's Flavor Stations.

19.     Snowie's Flavor Stations were primarily comprised of jugs or containers for holding a quantify of flavoring, liquid connections between the containers and flavor dispensing spigots, a drip area for catching waste or overflow flavoring, a waste collection container, a structure for supporting the containers, liquid connections, spigots, drip area and waste container, and a plurality of liquid connections enabling each flavor container to provide one independent flavor to multiple spigots distinct from spigots connected to the other flavor containers. These Flavor Stations were gravity fed, with the containers located above the spigots resulting in the automatic flow of fluid when the spigots were operated without the need for pumps.

4836-9964-4512

20.     Over time, Snowie continued to develop and improve various Flavor Station designs, including counter-top Flavor Stations providing access to up to 6, 8 and 10 different flavors.

21.     Prior to approximately 2005, Snowie had developed and commercialized various unique and industry leading mobile shaved-ice retail units, such as buildings, kiosks, carts, and so forth. Between 2005 and 2006, however, Snowie began designing, developing and innovating mobile shaved-ice retail automobiles eventually marketed, commercialized and sold by Snowie under the tradename "Snowie Bus." In the process of designing and developing the Snowie Bus over the next several months, Plaintiff Rupp conceived of and prototyped a number of ideas for providing a Snowie Bus having an integrated Flavor Station, including the conception and reduction to practice of a Flavor Station designed to removably hang on the side of the Snowie Bus as well as integrated Flavor Stations operable between an open and closed configuration by means of a sliding door operated from within the Snowie Bus by an employee so as to enable or disable end-consumer access to the integrated Flavor Station. In developing the foregoing, Plaintiff Rupp began assembling and manufacturing parts and testing working prototypes of his inventive concepts.

22.     Although integrated within the Snowie Bus, such Flavor Stations were still primarily comprised of jugs or containers for holding a quantify of flavoring located within the Snowie Bus, liquid connections between the containers and flavor dispensing spigots capable of being accessed from outside the Snowie Bus when the Flavor Station was operable, a drip area beneath the spigots for catching waste or overflow flavoring, a waste collection container located

7

within the Snowie Bus, structural features of the Snowie Bus for supporting the containers, liquid connections, spigots, drip area and waste container, and a plurality of liquid connections enabling each flavor container to provide one independent flavor to multiple spigots distinct from spigots connected to the other flavor containers. Likewise, these integrated Flavor Stations were gravity fed, with the containers located above the spigots resulting in the automatic flow of fluid when the spigots were operated without the need for pumps. In other words, Plaintiff Rupp's integrated Flavor Station designs intended for the Snowie Bus capitalized on Plaintiff Rupp's prior Flavor Station innovations, adding significant new, novel and non-obvious improvements unknown to prior Flavor Stations. And Plaintiff Rupp's conceptions were sufficiently definite and permanent that one skilled in the art could understand the same, particularly with the aid of Plaintiff Rupp's prototypes.

23.     Over the ensuing months, Plaintiff Rupp continued to design, develop and improve the integrated Flavor Stations intended for the Snowie Bus.

24.     In approximately April of 2007, Snowie and Plaintiff Rupp were approached by Defendant Lamb on behalf of himself and Kona. On April 9, 2007, Kona purchased one (1) of Snowie's large, commercial-grade ice shaving machines. Concurrently therewith, Defendant Lamb discussed the concept of a mobile shaved-ice retail automobile with an integrated Flavor Station with Plaintiff Rupp. More specifically, Plaintiff Lamb, on behalf of himself and Kona, was in the process of developing a mobile shaved-ice retail automobile (the "Kona Ice Truck"). Knowing of Plaintiff Rupp's Flavor Station legacy and expertise, Defendant Lamb requested

Plaintiff Rupp's assistance in finalizing the conception, design, engineering, development and manufacture of a Flavor Station to be integrated in the Kona Ice Truck.

25.     In view of Defendant Lamb's request, Plaintiff Rupp proceeded to show and describe the ongoing development of Snowie's integrated Snowie Bus Flavor Station, including showing and demonstrating for Defendant Lamb a version of the Snowie Bus Flavor Station prototype designed to removably hang on the side of the Snowie Bus. Plaintiff Rupp provided the foregoing information to assure Defendant Lamb that Plaintiff Rupp, on behalf of himself and Snowie, had already conceived of various integrated Flavor Station designs, having developed working prototypes of some of those designs. Defendant Lamb acknowledged Plaintiff Rupp and Snowie's innovative developments and improvements. Moreover, Plaintiff Rupp and Defendant Lamb continued to converse on the topic of a Flavor Station for a mobile automobile, jointly discussing and conceiving of various alternative designs and arrangements during the course of the conversation.

26.     Following Defendant Lamb and Plaintiff Rupp's conversation in early April 2007, Defendant Lamb, on behalf of himself and Kona, worked with Plaintiff Rupp and Snowie to finalize the conception, design, engineering, development and manufacture of a Flavor Station for the Kona Ice Truck. Plaintiff Rupp and Snowie were specifically sought out by Defendant Lamb and Kona owing to Plaintiff Rupp and Snowie's long-time experience and know how in the innovation, development, design, and manufacture of Flavor Stations.

27.     Ultimately, Defendant Lamb and Plaintiff Rupp collaborated in the design and development of the first Flavor Station integrated within a Kona Ice Truck, which consisted of a

pivotable design operable from within the vehicle to open and close the Flavor Station by pivoting the Flavor Station between an open and closed position relative to end-consumers.

28.    In connection with collaborating on the pivotable Flavor Station design, Defendant Lamb, on behalf of himself and Kona, orally agreed to exclusively employ Snowie to manufacture pivotable Flavor Stations for the Kona Ice Trucks going forward. Likewise, Defendant Lamb, on behalf of himself and Kona, purchased a number of shaved-ice products from Snowie over the next few months, including three (3) of Snowie's large, commercial-grade ice shaving machines in May 2007, three (3) Flavor Stations in May 2007, molds and models for the pivotable Flavor Station in May 2007, fourteen (14) gallons of flavoring concentrate in August 2007, another of Snowie's large, commercial-grade ice shaving machines in August 2007, and so forth. And over the ensuing years, Defendant Lamb, on behalf of himself and Kona, continued to purchase Snowie's large, commercial-grade ice shaving machines, including eighteen (18) in 2008, fifty-five (55) in 2009, sixty-six (66) in 2010, ninety-six (96) in 2011, one-hundred and thirty-eight (138) in 2012, and so forth. Nevertheless, notwithstanding Defendant Lamb's, on behalf of himself and Kona, continued and increasing purchase of Snowie's large, commercial-grade ice shaving machines, Kona found an alternative source for its flavoring as well as the manufacture of pivotable Flavor Stations which Kona had agreed to purchase exclusively from Snowie.

29.    Following Snowie and Plaintiff Rupp's completion of the first pivotable Flavor Station, and unbeknownst to either Snowie or Plaintiff Rupp, on July 16, 2007, Defendant Lamb, in concert with Defendant Guard, filed a provisional patent application (application no.

10

60/959,588) with the United States Patent and Trademark Office (the "USPTO") drawn to the innovations which Plaintiff Rupp had independently conceived of prior to April 2007 which were shown to Defendant Lamb as well as innovations Plaintiff Rupp and Defendant Lamb had jointly conceived of between April and June 2007. On information and belief, either through innocent omission or oversight, Defendants Lamb and Guard filed the above-identified provisional patent application without naming or identifying Plaintiff Rupp as an inventor or co-inventor thereof.

30.     Ultimately, the above-identified provisional patent application was converted into a full utility patent application (application no. 12/171,930) filed on July 11, 2008, which eventually issued as United States Patent No. 8,157,136 ("the '136 Patent") to Defendants Lamb and Guard on April 17, 2012. Nevertheless, and notwithstanding the filing of inventor declarations, on information and belief, either through innocent omission or oversight, Defendants Lamb and Guard prosecuted the '136 Patent without correcting the application to name or identify Plaintiff Rupp as an inventor or co-inventor thereof.

31.     The '136 Patent was subsequently assigned to Defendant Kona effective November 14, 2008, which assignment was recorded with the USPTO on April 26, 2012.

32.     Just before the '136 Patent issued, and unbeknownst to either Snowie or Plaintiff Rupp, on April 5, 2012, Defendant Lamb, in concert with Defendant Guard, filed a divisional patent application (application no. 13/439,923) claiming priority to the '136 Patent with the USPTO. That divisional application was specifically drawn to another of Plaintiff Rupp's independent conceptions predating Plaintiff Rupp and Defendant Lamb's April 2007 meeting,

11

during which Plaintiff Rupp demonstrated to Defendant Lamb at that time. Ultimately, the above-identified divisional patent application issued as United States Patent No. 8,915,407 ("the '407 Patent") to Defendants Lamb and Guard on December 23, 2014. Nevertheless, and notwithstanding the filing of inventor declarations, on information and belief, either through innocent omission or oversight, Defendants Lamb and Guard prosecuted the '407 Patent without naming or identifying Plaintiff Rupp as an inventor or co-inventor thereof.

33.     The '407 Patent facially purports assignment to Defendant Kona.

34.     Collectively, the '136 Patent and the '407 Patent (the "Patents-in-suit") claim the innovations which Plaintiff Rupp had independently conceived of prior to April 2007 which were shown to Defendant Lamb as well as innovations Plaintiff Rupp and Defendant Lamb had jointly conceived of between April and June 2007, including, *inter alia*, a Flavor Station designed to removably hang on the side of a vehicle, Flavor Stations integrated within a vehicle operable between an open and closed configuration by means of a sliding door operated from within the vehicle by an employee so as to enable or disable end-consumer access to the integrated Flavor Station, and a pivotable integrated Flavor Station, operable from within the vehicle to open and close the Flavor Station by pivoting the Flavor Station between an open and closed position relative to end-consumers.

35.     Notwithstanding Plaintiff Rupp's significant contributions to conception of at least the foregoing claimed inventions or key inventive elements, as well as Snowie's corresponding interests in the Patents-in-Suit, on information and belief, either through innocent omission or oversight, Defendants Lamb and Guard initially prosecuted and ultimately obtained

12

the issued Patents-in-Suit without naming or identifying Plaintiff Rupp as an inventor or co-inventor thereof and without Plaintiff's Rupp's knowledge or involvement.

36.     Since issuance of the Patents-in-Suit, at least Defendant Lamb, on behalf of himself and Kona, has repeatedly and consistently threatened (1) to sue Snowie for infringement of one or both of the Patents-in-Suit, (2) to sue Snowie's existing customers for purchasing a Snowie Bus, and/or (3) to sue Snowie's prospective customers and other business relations if they purchase a Snowie Bus, including seeking to enjoin the use of any such Snowie Bus or court-ordered retrofitting thereof. Such threats have caused confusion in the shaved-ice industry and resulted in the loss of numerous Snowie customers and/or business opportunities.

37.     On information and belief, Defendants have never taken any steps to correct inventorship of the Patents-in-Suit to name or identify Plaintiff Rupp as an inventor thereof. On information and belief, Defendants actions comprise unclean hands.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Correction of Inventorship: Patents-in-Suit – 35 U.S.C. § 256

38.     Plaintiffs repeat and re-allege all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

39.     This is a suit to correct the inventors named in both of the Patents-in-Suit pursuant to 35 U.S.C. § 256 to name and identify Plaintiff Rupp as an inventor or co-inventor. On information and belief, Defendants, through innocent omission and/or oversight, failed to name Plaintiff Rupp as an inventor of the Patents-in-Suit notwithstanding Plaintiff Rupp's significant

4836-9964-4512

contributions to the conception of the inventions or key inventive elements claimed in one or more claims of the Patents-in-Suit.

40.     By failing to name Plaintiff Rupp as an inventor or joint inventor in the declaration filed in support of the Patents-in-Suit, or correct the same during the course of prosecution thereof, Defendants Lamb and Guard violated 35 U.S.C. §§ 115 and 116, which require the identification of each inventor in the oath or declaration supporting an application for patent.

41.     Plaintiff Rupp, as a leading contributor to conception of the patented inventions and the owner and founder of Snowie, has a personal ownership and other interests in having inventorship of the Patents-in-Suit corrected in accordance with the Patent Laws of the United States.

42.     Snowie, as a company operating within the shaved-ice confection industry and deriving great value from Plaintiff Rupp's innovations, Snowie has direct financial interests in having inventorship of the Patents-in-Suit corrected in accordance with the Patent Laws of the United States.

43.     Without correction of the named inventors under 35 U.S.C. § 256, Defendants' violation of 35 U.S.C. §§ 115 and 116 will continue unabated to the detriment of Plaintiffs and the public at large.

44.     Likewise, Defendants Lamb and Guard's failure to name Plaintiff Rupp as an inventor of the Patents-in-Suit has injured and continued to injury Plaintiffs in an amount to be determined at trial.

4836-9964-4512

45. Defendants Lamb and Guard's failure to name Plaintiff Rupp as an inventor of the Patents-in-Suit has also resulted in irreparable damage to Plaintiffs, and Plaintiffs will continue to be irreparably harmed by Defendants' conduct unless and until the Court enjoins such actions.

46. Plaintiffs, therefore, request correction of the inventors named in the Patents-in-Suit to insure compliance with the federal requirements for filing patent applications, to preserve Plaintiff Rupp's good name and reputation, to fairly compensate Plaintiffs for their injuries, to enjoin actions in violation of the Patent Laws of the United States, and to properly identify the inventors for the benefit of the public.

47. Plaintiffs are entitled to and pray for an order from this Court, pursuant to 35 U.S.C. § 256, requiring the Director of the USPTO to issue an appropriate certificate of correction for both of the Patents-in-Suit.

48. Defendants' conduct also makes this case exceptional within the meaning of 35 U.S.C. § 285, entitling Plaintiffs to enhanced damages, including, but not limited to, an award of Plaintiffs' attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**Tortious Interference**

49. Plaintiffs repeat and re-allege all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

50. Defendants, either collectively or individually, have intentionally interfered with Plaintiffs' existing and potential economic relationships, including, but not limited to, Snowie's existing and potential customers or other business relations as well as Plaintiff Rupp's existing and/or potential economic reputation and opportunities.

15

51.     Defendants knew about and have known about the foregoing existing and potential business relationships throughout the relevant time period and continue to have knowledge and awareness of the same down to the present time.

52.     Defendants have repeatedly, continually and intentionally threated, either directly or indirectly, to sue Snowie for infringement of the Patents-in-Suit and/or to sue Snowie's customers for purchasing a Snowie Bus despite Plaintiff Rupp's inventorship of the Patents-in-Suit, such actions constituting improper means.

53.     Defendants' conduct comprising improper means has resulted in the loss, disruption or diminution of certain existing and potential economic relationships of Plaintiffs. Such conduct continues to threaten Plaintiffs' future economic relationships.

54.     Plaintiffs have suffered and will continue to suffer irreparable injury, in addition to monetary damages, as a direct and proximate result of Defendants' conduct. Absent injunctive relief, Plaintiffs will continue to be irreparably damaged by Defendants' conduct.

55.     Beyond irreparable harm, Plaintiffs have suffered other injuries and damages as a result of Defendants' conduct, which cannot yet be reasonably ascertained but will be proven at trial.

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment

56.     Plaintiffs repeat and re-allege all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

4836-9964-4512

57.     Defendants have received numerous benefits by virtue of patenting Plaintiff Rupp's inventive concepts, including gaining marketplace advantages and benefits through unfair competition with Snowie.

58.     At all relevant times, Defendants have been aware of and continue to be aware of such benefits and, on information and belief, have voluntarily accepted and enjoyed such benefits to Plaintiffs' detriment.

59.     It would be unjust and inequitable to allow Defendants to retain these benefits with fairly compensating Plaintiffs for the same in an amount equal to the fair market value of all such benefits to be proven at trial.

60.     Plaintiffs have incurred and will continue to incur monetary damages as a direct and proximate result of the benefits bestowed upon Defendants absent just compensation. Likewise, Plaintiffs have suffered and will continue to suffer irreparable injury, as a direct and proximate result of Defendants' conduct. Absent equitable relief, Plaintiffs will continue to be irreparably damaged by Defendants' conduct.

### FOURTH CLAIM FOR RELIEF
### Breach of Oral Contract (Against Kona & Lamb)

61.     Plaintiffs repeat and re-allege all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

62.     In April, 2007, Snowie and Kona, via Plaintiff Rupp and Defendant Lamb, entered a valid, binding, enforceable and sufficiently definite contract obligating Kona to exclusively purchase its Kona Ice Truck Flavor Stations from Snowie.

63.     Kona voluntarily agreed to be bound by that obligation.

17

64.     The rights, obligations and requirements of the parties' oral contract are and were supported by adequate consideration.

65.     At all relevant times, Plaintiffs have complied with, and/or worked in good faith to comply with, each and every one of their contractual obligations.

66.     Nevertheless, and notwithstanding their contractual obligations to the contrary, Defendants Kona and Lamb are in material breach of their contractual obligations, having failed to purchase Flavor Stations for the Kona Ice Trucks exclusively from Snowie.

67.     Plaintiffs have suffered and will continue to suffer irreparable injury, in addition to monetary damages, as a direct and proximate result of Defendants Lamb and Kona's conduct. Absent injunctive relief, Plaintiffs will continue to be irreparably damaged by such conduct.

68.     Beyond irreparable harm, Plaintiffs have suffered other injuries and damages as a result of Defendants Kona and Lamb's breach of contract, which damages cannot yet be reasonably ascertained but will be proven at trial.

### FIFTH CLAIM FOR RELIEF
### Promissory Estoppel (Against Kona & Lamb)

69.     Plaintiffs repeat and re-allege all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

70.     In April, 2007, Kona, via Defendant Lamb, promised to exclusively purchase its Kona Ice Truck Flavor Stations from Snowie.

71.     Defendant Lamb and Kona should have reasonably expect that their promises caused Plaintiffs to forbear from taking certain actions to develop other business interests and

opportunities or inducing Plaintiffs to take certain actions in an effort to further advance the business relationship of Kona, Snowie, Plaintiff Rupp, and Defendant Lamb.

72.      In reliance on Defendant Lamb and Kona's promises, Plaintiffs have, in fact, taken certain actions in an effort to improve the parties' business relationship at the expense of expending time and resources to develop other business interests and opportunities.

73.      Plaintiffs are entitled to enforcement of Defendant Lamb and Kona's promises.

74.      Plaintiffs stand ready, able and willing to perform their promises and are entitled to enforcement of Defendant Lamb and Kona's promises.

75.      It would be inequitable and unjust to allow Defendant Lamb and Kona to avoid enforcement of their promises, particularly where Plaintiffs have suffered and will continue to suffer irreparable injury as a direct and proximate result thereof and where Defendant Lamb and Kona already have and continue to enjoy significant benefits from the performance of Plaintiffs' promises. Absent injunctive relief, Plaintiffs will continue to be irreparably damaged by Defendant Lamb and Kona's conduct. More specifically, Plaintiffs have no adequate remedy at law and are entitled to enforcement of Defendant Lamb and Kona's promises.

### SIXTH CLAIM FOR RELIEF
### Deceptive Trade Practices – Utah Code Ann. § 13-11a-3 *et seq.*

76.      Plaintiffs repeat and re-allege all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

77.      Defendants have engaged in deceptive trade practices within the meaning of  Utah Code Ann. § 13-11a-3(1) inasmuch as Defendants' actions complained of herein have caused and continue to cause a likelihood of consumer confusion or misunderstanding as to the source

4836-9964-4512

or approval of Snowie's and/or Kona's Flavor Stations as well as any affiliation between Snowie, Plaintiff Rupp, Kona and Defendant Lamb. Likewise, Defendants' reliance on the Patents-in-Suit while omitting Plaintiff Rupp as an inventor thereof comprise misrepresentation as to the sponsorship, characteristics, or benefits of Kona's Flavor Stations and Kona Ice Trucks relative to Snowie's Flavor Stations and Snowie Buses. Moreover, Defendants' conduct and threats against Snowie and Snowie's customers comprise the disparagement of Snowie's goods, services or business by false or misleading representations of fact.

78.     Plaintiffs have suffered injuries and damages as a result of Defendants deceptive trade practices, which damages cannot yet be reasonably ascertained but will be proven at trial.

79.     Pursuant to Utah Code Ann. § 13-11a-4(2)(c), Snowie is entitled to an award of costs and attorneys' fees for Defendants' acts constituting deceptive trade practices.

### SEVENTH CLAIM FOR RELIEF
### Common Law False Advertising

80.     Plaintiffs repeat and re-allege all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

81.     Defendants have engaged in false advertising inasmuch as Defendants' actions complained of herein have caused and continue to cause a likelihood of consumer confusion or misunderstanding as to the source or approval of Snowie's and/or Kona's Flavor Stations as well as any affiliation between Snowie, Plaintiff Rupp, Kona and Defendant Lamb. Likewise, Defendants' reliance on the Patents-in-Suit while omitting Plaintiff Rupp as an inventor thereof comprise false and misleading advertising as to the sponsorship, characteristics, or benefits of Kona's Flavor Stations and Kona Ice Trucks relative to Snowie's Flavor Stations and Snowie

Buses. Moreover, Defendants' conduct and threats against Snowie and Snowie's customers comprise false or misleading representations of fact as to the scope of Kona's patent rights.

82.     Plaintiffs have suffered injuries and damages as a result of Defendants false advertising, which damages cannot yet be reasonably ascertained but will be proven at trial.

83.     Plaintiffs have been irreparably damages by Defendants' actions comprising false advertising  and will continue to be irreparably harmed absent injunctive relief from this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.     For a determination that Plaintiff Rupp is an inventor of the Patents-in-Suit;

B.     For an order requiring the Director of the USPTO to issue an appropriate certificate of correction for both of the Patents-in-Suit;

C.     Awarding Plaintiffs their damages in an amount to be determined at trial, but in no event less that the actual damages Plaintiffs have sustained as a result of Defendants' failure to name and identify Plaintiff Rupp as an inventor of the Patents-in-Suit;

D.     Awarding Plaintiffs enhanced fees, including an award of attorneys' fees, pursuant to 35 U.S.C. § 285;

E.     Solely in the alternative that inventorship of the Patents-in-Suit cannot, for any reasons, be appropriately corrected, for a determination that the Patents-in-Suit are invalid for inequitable conduct or other fraudulent and intentional deception of the USPTO in connection with prosecution of the Patents-in-Suit and an order enjoining Defendants' from further acts in

21

reliance on, or enforcement of, the Patents-in-Suit, including, but not limited to, against Plaintiffs and Snowie's customers;

F.      For a determination that Defendants have tortiously interfered with Plaintiffs' prospective and existing economic relationships;

G.      Awarding Plaintiffs their damages in an amount to be determined at trial, but in no event less that the actual damages Plaintiffs have sustained as a result of Defendants' acts constituting tortious interference;

H.      For a determination that Defendants have been unjustly enriched by virtue of failing to name Plaintiff Rupp as an inventor of the Patents-in-Suit and using the same to gain competitive advantages in the marketplace and an order requiring Defendants to jointly and severally compensate Plaintiffs for receipt of these benefits;

I.      For a determination that Defendants Lamb and Kona have either breached their oral contractual obligations or should otherwise be bound by promissory estoppel to perform all such obligations;

J.      Awarding Plaintiffs their damages in an amount to be determined at trial, but in no event less that the actual damages Plaintiffs have sustained as a result of Defendants Lamb and Kona's acts constituting either breach of an oral contract or promissory estoppel;

K.      For a determination that Defendants engaged in and committed acts of deceptive trade practices resulting in liability under Utah Code Ann. § 13-11a-3;

L.      Awarding Plaintiffs their damages in an amount to be determined at trial, but in no event less that the actual damages Plaintiffs have sustained as a result of Defendants' acts

4836-9964-4512

constituting deceptive trade practices, including an award of Plaintiffs' costs and attorneys' fees pursuant to Utah Code Ann. § 13-11a-4(2)(c);

M.     For a determination that Defendants engaged in and committed acts of common law false advertising resulting in liability;

N.     Awarding Plaintiffs their damages in an amount to be determined at trial, but in no event less that the actual damages Plaintiffs have sustained as a result of Defendants' acts constituting false advertising;

O.     For preliminary and permanent injunctive relief consistent with, in addition to, or in lieu of other remedies prayed for herein;

P.     Awarding Plaintiffs' attorney's fees;

Q.     For all compensatory, special, general, statutory, and punitive damages available against the Defendants in an amount to be proven at trial, along with pre and post-judgment interest thereon, but in no event less than $400,000.00; and

R.     For all such further relief as the Court deems just and proper.

4836-9964-4512

## JURY TRIAL DEMAND

Plaintiffs hereby respectfully demand a jury trial on all such claims and causes of action, including any counterclaims or cross-claims hereafter asserted, so triable.

DATED this 4th day of April, 2018.                Respectfully submitted,

KIRTON | McCONKIE

By: */s/ Joshua S. Rupp*
James T. Burton
Joshua S. Rupp
*Attorneys for Plaintiffs Snowie, LLC
and Carl A. Rupp*

*4836-9964-4512, V. 1*

24

4836-9964-4512